NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| GLENDA F. JOHNSON, | Civil Action No.: |
| Plaintiff, | 16-cv-2531 (JLL) |
| v. | OPINION |
| SALLY BEAUTY SUPPLY, LLC | |
| Defendant. | |

**LINARES**, District Judge.

This matter comes before the Court by way of Defendant Sally Beauty Supply, LLC's motion to compel arbitration and dismiss the Complaint filed by *Pro se* Plaintiff Glenda F. Johnson in the above-captioned matter. (ECF No. 6). Plaintiff has opposed this motion. (ECF No. 10) and Defendant has replied to same (ECF No. 11). The Court decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78. Having reviewed the papers filed in support of and in opposition to the pending motion, and for the reasons stated herein, the Court grants Defendant's motion to compel arbitration.

I.  **Background**[1]

*Pro se* Plaintiff Glenda F. Johnson filed this action on May 3, 2016, alleging that her former employer, Defendant Sally Beauty Supply, LLC ("SBS"), violated Title VII of the Civil Rights

---

[1] The facts as stated herein are taken as alleged in Plaintiff's Complaint. (ECF No. 1, "Compl."). For purposes of this Motion to Dismiss, these allegations are accepted by the Court as true. *See Phillips v. County of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008) ("The District Court, in deciding a motion [to dismiss under Rule] 12(b)(6), was required to accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to [the plaintiff].").

1

Act of 1964 by discriminating against Plaintiff based upon her race and color. (ECF No. 1, Complaint, "Compl.").

According to the Complaint, SBS hired Plaintiff in October 2014 for the position of Assistant Manager for SBS's store in Bloomfield, New Jersey. (*Id.* at 2). Plaintiff alleges that she was never provided with training or a training manual "as other [sic] who were not Black" received and that she "believes that Defendant(s) [sic] failed to provide the manual or training because of her Race and Color." (*Id.* at 1-2). Plaintiff further alleges that as a result of her lack of training, she was demoted to the lesser-paid position of Sales Associate in February 2015. (*Id.* at 3). According to Plaintiff, "[o]thers who are not of Plaintiffs [sic] Race and Color were fully trained and did not receive a reduction in pay or position." (*Id.*).

Additionally, Plaintiff alleges that unlike her, white associates were entrusted with keys to the store and to a safe. (*Id.*). Plaintiff appears to allege that she was wrongfully accused of theft by Defendant on or about March 25, 2015, when her supervisors "called Plaintiff on her day off alleging that her cash strips were missing." (*Id.*). Although another employee was ultimately terminated in connection with the missing cash strips, Plaintiff alleges that "[t]he mere allegation of [Plaintiff's] integrity and work professionalism was based on [her] Race and Color." (*Id.*).

Plaintiff also takes exception with the way in which her supervisors allegedly responded to her reporting of a security breach. (*Id.* at 4). Specifically, Plaintiff alleges that when she notified a supervisor of the security breach, that supervisor "responded back by saying[ ] Plaintiff need [sic] to stop complaining." (*Id.*). Plaintiff believes that a white employee who made a similar report would have been rewarded rather than demoted and, ultimately, terminated as Plaintiff was. (*Id.*).

Against this backdrop, and armed with a Right to Sue letter from the Equal Employment Opportunity Commission, Plaintiff filed the above-captioned matter, naming SBS as the sole

Defendant. On July 11, 2016, SBS filed the pending Motion to Compel Arbitration and Dismiss the Complaint. (ECF No. 6, "Def.'s Mov. Br."). Plaintiff opposed this Motion on August 25, 2016 (ECF No. 10, "Pl.'s Opp. Br."), and Defendant replied to same on September 1, 2016 (ECF No. 11, "Def.'s Reply Br."). This matter is now ripe for the Court's adjudication.

## II.     Legal Standard

Generally, an agreement to arbitrate a dispute "is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *E.M. Diagnostics Sys., Inc. v. Local 169, Int'l Brotherhood of Teamsters, Chauffeurs, Warehouseman & Helpers of America,* 812 F.2d 91, 94 (3d Cir.1987) (quoting, in full, *Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582 (1960)). The Federal Arbitration Act (the "FAA" or the "Act"), applies to arbitration clauses contained in contracts involving matters of interstate commerce. *See* 9 U.S.C. § 2; *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24 (1983). When a party whose claims are subject to the Act refuses to arbitrate the same, the district court must decipher whether the claims are arbitrable. *Medtronic Ave, Inc. v. Advanced Cardiovascular Sys., Inc.,* 247 F.3d 44, 54 (3d Cir.2001) (citing *AT & T Techs., Inc. v. Commc'ns Workers of Am.,* 475 U.S. 643, 649 (1986)). "In the absence of any express provision excluding a particular grievance from arbitration, ... only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *AT & T Techs.*, 475 U.S. at 653 (quotations omitted); *see Par–Knit Mills, Inc. v. Stockbridge Fabrics Co., Ltd.,* 636 F.2d 51, 54 (3d Cir.1980) ("Before a party to a lawsuit can be ordered to arbitrate and thus be deprived of a day in court, there should be an express, unequivocal agreement to that effect.").

Federal policy favors arbitration and "thus a court resolves doubts about the scope of an arbitration agreement in favor of arbitration." *Medtronic,* 247 F.3d at 55 (citing *Moses H. Cone,*

460 U.S. at 24–25); *Zimmerman,* 783 F.Supp. at 868. The presumption in favor of arbitration guides district courts to refrain from denying a motion to compel arbitration absent certainty that the claims do not fall within the scope of an arbitration clause. *See Medtronic,* 247 F.3d at 55; *Zimmerman,* 783 F.Supp. at 869 ("There is a presumption of arbitrability in the sense that an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.") (internal citations and quotations omitted). However, "[i]f there is doubt as to whether such an agreement [to arbitrate] exists, the matter, upon a proper and timely demand, should be submitted to a jury." *Par–Knit,* 636 F.2d at 54.

In considering a motion to compel arbitration, a court must engage in a two-step analysis: it must determine first whether there is a valid agreement to arbitrate and, if so, whether the specific dispute falls within the scope of said agreement. *See Century Indem. Co. v. Certain Underwriters at Lloyd's,* 584 F.3d 513, 523 (3d Cir.2009); *Salvadori v. Option One Mtg. Corp.,* 420 F.Supp.2d 349, 356 (D.N.J.2006). In doing so, the Court utilizes the summary judgment standard of Federal Rule of Civil Procedure 56(c). *See Par–Knit,* 636 F.2d at 54 n. 9. A court shall grant summary judgment under Rule 56(c) of the Federal Rules of Civil Procedure "if there is no genuine issue as to any material fact and [ ] the movant is entitled to judgment as a matter of law." Fed. R. Civ.P. 56(c).

### III. Discussion

#### a. The Arbitration Agreement

Defendant seeks to enforce a "Workplace Resolution Program and Mutual Agreement to Arbitration Claims" ("Arbitration Agreement") which Plaintiff executed on October 27, 2014.

(ECF No. 6-2, Declaration of Ryan T. Warden, Esq. ("Warden Decl."), Exh. B ("Arbitration Agreement")). In pertinent part, the Arbitration Agreement provides:

- Introduction: This [Arbitration Agreement] is between me and the Sally Beauty Holdings, Inc. affiliate I am employed by (the "Company"). ... The Federal Arbitration Act (9 U.S.C. § 1 *et seq.*) shall govern this Agreement, which evidences a transaction involving commerce. **All disputes covered by this Agreement between me and the Company shall be decided by an arbitrator through arbitration and not by way of court or jury trial.**

- Disputes Covered by the Agreement: The Company and I mutually consent and agree to the resolution by arbitration of all claims or controversies, past, present, or future ("Disputes"), including without limitation, claims arising out of or related to my application for assignment/employment, and/or the termination of my assignment/employment that the Company may have against me or that I may have against [the Company].

  Further, **covered Disputes include any claim or controversy regarding the Agreement or any portion of the Agreement or its interpretation, enforceability, applicability, unconscionability,** arbitrability, or formation, or whether the Agreement or any portion of the Agreement is void or voidable [the ("delegation clause")]. ...

  .... Except as otherwise provided, this Agreement covers all claims that either the Company or I could bring arising out of or relating to my employment relationship with the Company, including, but not limited to: (i) discrimination based on race, creed, color, religion, sex, age, disability, leave status ... (ii) retaliation, including, but not limited to, whistleblower status or retaliation for filing a workers' compensation claim ....

(Arbitration Agreement at 1) (emphasis added).

Additionally, the following provision appears at the end of the Arbitration Agreement, in bold, upper-case font:

> **BY SIGNING BELOW, I ACKNOWLEDGE THAT I HAVE CAREFULLY READ AND UNDERSTAND THIS AGREEMENT AND AGREE TO ITS TERMS. I AGREE THAT BY SIGNING THIS AGREEMENT, THE COMPANY AND I ARE GIVING UP OUR RIGHTS TO A JURY TRIAL AND THAT PURSUANT TO THE TERMS OF THIS AGREEMENT, WE ARE AGREEING TO ARBITRATE DISPUTES COVERED BY THIS AGREEMENT.**

(*Id.* at 4) (emphasis in orginal).

### b. Defendant's Arguments

Defendant explains that the instant case presents two disputes that are subject to arbitration. First, to the extent that Plaintiff is challenging the enforceability or validity of the Arbitration Agreement itself, Defendant maintains that this dispute should be settled by the arbitrator, rather than the Court. Specifically, Defendant points to the Arbitration Agreement's "'delegation clause,' which provides that any disputes regarding the arbitration agreement or 'its interpretation, enforceability, unconscionability, arbitrability, or formation, or whether the Agreement or any portion of the Agreement is void or voidable . . .' must be decided by the arbitrator, not by the Court. (Def.'s Mov. Br. at 1). Alternatively, if the Court declines to enforce the delegation clause, Defendant argues that Plaintiff's allegations of employment discrimination fall squarely within the "Disputes Covered by this Agreement" section of the Arbitration Agreement, and that the Court should therefore compel arbitration of same.

### c. Plaintiff's Argument

In opposition, Plaintiff has not addressed the effect of the delegation clause on the instant dispute. Instead, Plaintiff argues that the Arbitration Agreement as a whole is "voidable" as a matter of public policy. (Pl.'s Opp. Br. at 2). Specifically, Plaintiff argues that an employment contract that contains an arbitration provision amounts to "a pre-employment test, which takes away one's fundamental rights to a trial, Due Process and expects applicant(s) to be knowledgeable of contract formation, rules and regulations of arbitration." (*Id.* at 3). Plaintiff also takes exception with the "take it or leave it approach" of the contractual provisions. (*Id.* at 4).[2] Moreover, Plaintiff argues that the Arbitration Agreement "is ambiguous, vague, and so convoluted that it borders on fraud, or at best negligence." (*Id.* at 5). Finally, Plaintiff argues that because the Arbitration

---

[2] Plaintiff also argues that Defendant wronged her by not advising her of "the New Jersey local practice of providing in plain language that parties have a three day right of review of a contract by an attorney." (*Id.* at 5). Plaintiff provides no support for the existence of this "three day right of review," nor is the Court aware of any.

6

Agreement provides that the Defendant will pay the arbitrator's fees, the arbitrator would become an employee of the Defendant, rendering the arbitration procedure unfair. (*Id.* at 10).

### d. Analysis: Effect of the Arbitration Agreement's "Delegation Clause"

As discussed above, under a heading titled "Disputes Covered by the Agreement," the Arbitration Agreement provides that: covered "Disputes include any claim or controversy regarding the Agreement or any portion of the Agreement or its interpretation, enforceability, applicability, unconscionability, arbitrability, or formation, or whether the Agreement or any portion of the Agreement is void or voidable . . . ." Relying on this provision, Defendant argues that the issue raised by Plaintiff's opposition—that is, the enforceability and validity of the Arbitration Agreement as a whole—is subject to resolution by an arbitrator rather than this Court.

In *Rent-A-Center, West, Inc. v. Jackson*, 130 S. Ct. 2772 (2010), the Supreme Court provided guidance to Courts considering a challenge to an arbitration contract that contains a provision requiring arbitration of certain "'gateway' questions of 'arbitrability,'" such as the validity and enforceability of the arbitration agreement itself. The Court specifically weighed in on the effect of "delegation clauses"—such as the one in the instant Arbitration Agreement—on a District Court's obligation to determine whether an agreement to arbitrate is valid and enforceable. The Court explained:

> An agreement to arbitrate a gateway issue [i.e., whether the arbitration agreement is enforceable] is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does any other. The additional agreement is valid under § 2 "save upon such grounds as exist at law or in equity for the revocation of any contract," and federal courts can enforce the agreement by staying litigation under § 3 and compelling arbitration under § 4.

*Id.* at 2778. Stated differently, the Court held that agreements to arbitrate the arbitrability of claims are themselves "agreements to arbitrate" subject to § 2 of the FAA. *Id.* Section 2 "states that a 'written provision' is 'valid, irrevocable, and enforceable' *without mention* of the validity of the

contract in which it is contained." *Id.* Therefore, "a party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate." *Id.* As the Third Circuit explained, "[t]o eliminate the confusion caused by an agreement to arbitrate nested within another agreement to arbitrate, the *Rent-A-Center* Court found it necessary to distinguish between the overall arbitration agreement (the 'contract'), and the agreement to arbitrate arbitrability (the 'delegation clause')." *Id.*

To that end, to the extent a party wishes to challenge a delegation clause "nested within another agreement to arbitrate," *id.*, the Supreme Court "require[s] the basis of the challenge to be directed specifically to the agreement to arbitrate before the Court will intervene" in deciding whether the delegation clause is valid. *Rent-A-Center*, 130 S. Ct. at 2778. In *Rent-A-Center*, the Court found that although the plaintiff had challenged the enforceability of the arbitration agreement as a whole, the plaintiff had not specifically challenged the validity of the arbitration agreement's delegation clause. *Id.* at 2779. Therefore, because the plaintiff failed to specifically challenge the delegation clause, the Court "treated it as valid under § 2, and [ ] enforce[d] [the clause] under §§ 3 and 4, [therefore] leaving any challenge to the validity of the Agreement as a whole for the arbitrator." *Id.*

Here, just as in *Rent-A-Center*, Plaintiff has failed to specifically challenge the validity of the delegation provision. In fact, like the plaintiff in *Rent-A-Center*, Plaintiff's opposition brief does not once mention or reference the delegation clause. Rather, Plaintiff frames the issue before the Court as whether the Arbitration Agreement, as a whole, is voidable. (Pl.'s Opp. Br. at 3). Accordingly, regardless of whether or not the Arbitration Agreement as a whole is valid, the delegation clause is certainly severable from that Agreement. Because Plaintiff has failed to properly place the issue of the validity of the delegation clause before this Court, that issue is more

properly before the arbitrator, and the Court will grant Defendant's motion to compel arbitration to that end.

### IV. Conclusion

Based on the reasons set forth above, the Court finds that the issue raised by Plaintiff in her opposition to Defendant's motion to dismiss—that is, whether the Arbitration Agreement is unconscionable—falls within the scope of the Arbitration Agreement. Therefore, the Court compels arbitration of this issue. For purposes of judicial economy, the Court will dismiss this matter without prejudice pending arbitration.[3]

**IT IS SO ORDERED.**

DATED:   September 12, 2016

_____
JOSE L. LINARES, U.S.D.J.

---

[3] In so doing, the Court notes that Plaintiff has not requested that the matter be stayed pending arbitration. *See, e.g., Lloyd v. HOVENSA LLC*, 369 F.3d 263, 269 (3d. Cir. 2004) ("Here, the plain language of § 3 affords a district court no discretion to dismiss a case where one of the parties applies for a stay pending arbitration.").